# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

DIAGEO NORTH AMERICA, INC.,

  Plaintiff/Counterclaim Defendant,    Case No.
                                   1:17-cv-
               vs.                   04259-LLS

W.J. DEUTSCH & SONS LTD, et al.,

  Defendants/Counterclaim Plaintiffs.
------------------------------------X

VIDEO DEPOSITION OF BRYAN M. VAN UDEN

New York, New York

Wednesday, May 29, 2019

Stenographically Reported by:
PATRICIA A. BIDONDE, RPR
JOB #:  30252

**EcoScribe Solutions**

www.EcoScribeSolutions.com

888.651.0505



IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------X

DIAGEO NORTH AMERICA, INC.,

Plaintiff/Counterclaim Defendant,        Case No.
                                         1:17-cv-
                    vs.                   04259-LLS

W.J. DEUTSCH & SONS LTD, et al.,

Defendants/Counterclaim Plaintiffs.
---------------------------------------X

VIDEO DEPOSITION OF BRYAN M. VAN UDEN

New York, New York

Wednesday, May 29, 2019

Stenographically Reported by:
PATRICIA A. BIDONDE, RPR
JOB #:  30252

B. Van Uden

but ultimately didn't begin any work on this

until maybe till the latter part of December.

Q.    What was your assignment when you

were engaged?

A.    I believe it was to assess

damages in the form of disgorgement of profits

calculation for trademark matter.

Q.    What is -- now -- what is the

scope of your expertise that brings you here

today?

A.    I would say my expertise is in

intellectual property or in commercial damages

calculations.

Q.    So you are not an expert on what

is legally permitted or required in the

context of intellectual property disputes?

MR. ALDERDICE:  Objection.

Vague.

A.    I'm not sure I'm following your

question.

Q.    You are not -- to be clear, you

are not an expert in the law of intellectual

property or commercial damages?

A.    I would agree.  I don't intend to

B. Van Uden

A.     Well, again, I would say I reviewed the financial information that was, you know, provided in this case.  And based on my review and analysis of that information, I determined what I would be -- the appropriate revenues subject to a calculation of disgorgement.

Q.     Did you speak with any Diageo executives?

A.     I did not.  But I don't know that the Diageo executives would have any insight into Deutsch's financials.

Q.     Did you review any materials not disclosed in Attachment 2 of your report?

A.     Besides Mr. Reilly's report, no.

Q.     And again back to paragraph 6 and your earlier testimony, you said that you -- your assignment was:  "To calculate the defendants' profits that may be subject to disgorgement as a result of their alleged infringement as set forth in Diageo's complaint."

You didn't do any other type of profits analysis besides this, did you?

B. Van Uden

A.    That's correct.  I have not done any -- like, a lost profits calculation or anything like that to date.

Q.    And we have only received your report here that's in front of us, which is dated March 1, 2019.  We have not received any supplemental written report from you.  So we have a common understanding that you will not be testifying today beyond the scope of your March 4 -- 1 report.

Do we have a common understanding that you won't be testifying beyond the scope of what's presented in your March 1 report?

A.    I would agree other than any comments that I have with regard to Mr. Reilly's report that you might ask.

MS. SYED:  Yeah.  We would object to that.

MR. ALDERDICE:  You're asking the questions, so you can ask him what questions you would like.  I'm not sure what the extent of your objection is.

MS. SYED:  I mean --

MR. GRAFF:  Let me speak, if you

B. Van Uden

pricing strategy subject a party to

disgorgement of the profits?

       MR. ALDERDICE:  Same objection.

   A.   It can be a relevant factor, yes.

   Q.   It can be a relevant factor.  In your opinion is it a relevant factor here?

   A.   I believe it could be, yes.

   Q.   Why?

   A.   Well, again, because if they're specifically targeting your brand -- keep in mind disgorgement -- it can also oftentimes be a proxy for potential lost profits as well. So to the extent that is, in fact, the case, that would be relevant to know that they're competing in the same market, the same price base, and targeting the same customers.

   Q.   Okay.  But here you have not offered an opinion with respect to lost profits of the plaintiff.

   A.   I'm not offering --

   Q.   Is that correct?

   A.   I'm not offering a lost profits.

   Q.   On page 20 of your report, you discuss in part the, quote unquote, "evidence

B. Van Uden

A.      Again, I vaguely recall that. But if he bought it -- if he thought it was two Bulleit products and he chose the one to buy on sale, I mean, to some extent that could be a lost sale for Bulleit.

Q.      But again, you're not testifying today about any lost sales -- any sales that may have been lost by Diageo due to any alleged infringement.   Correct?

A.      I'm not testifying to lost profits, no.

Q.      Right.   In paragraph 48 of your report, you state:  "Given the evidence of actual confusion in the market, Diageo is likely to experience actual harm through the loss of good will in its Bulleit mark and Bulleit trade dress as well as the potential" --

MR. GRAFF:  Just -- can we have two seconds?

MR. ALDERDICE:  Sure.  Do you want to take a break?

MR. GRAFF:  No.

(Discussion off the record.)

B. Van Uden

Q.   So Mr. Van Uden, you're not intending to offer any opinion today as to whether the Redemption bottle is so similar to the Bulleit bottle as to create a likelihood of confusion among purchasers.  Correct?

A.   I'm not offering a likelihood of confusion opinion, no.

Q.   Because that would fall outside the scope of your expertise, would it not?

A.   Correct.

Q.   Nor are you offering any opinion as to whether Diageo is entitled to any -- recover any profits from Deutsch.  Correct?

MR. ALDERDICE:  Objection to the form.

A.   Can you repeat that last one?

Q.   Are you offering any opinion as to whether Diageo is entitled to recover any profits from Deutsch?

A.   Well, my --

MR. ALDERDICE:  Same objection.

A.   My calculation is a calculation over disgorgement of profits.

Q.   Have you calculated Diageo's lost

B. Van Uden

profits?

MR. ALDERDICE:  Objection: asked and answered.

A.    No.  I am not offering a lost profits opinion.

Q.    Is your report complete?

A.    My report is complete subject to, I guess, Deutsch producing updated financial information, which I assume they would at some point.

Q.    Have you served any supplemental report regarding Diageo's alleged profits?

A.    Not to date.

Q.    Okay.  So I'm not going to be questioning you about lost profits today because you have not to date provided us with a calculation of Diageo's alleged lost profits, just to be clear.

And you have not served any supplemental report calculating any -- any monetary remedy, to use a term you use in your report, other than disgorgement of Deutsch's profits for its alleged trademark and trade dress infringement.  Is that correct?

B. Van Uden

A.     That's correct.

Q.     What diligence did you conduct, if any, regarding the financial figures Diageo provided regarding their sales revenues and profits?  I think that's in Figure 4 of your report.

A.     I wouldn't say that I conducted -- actually, due diligence on Diageo's -- Diageo's numbers aren't necessarily a component of my damages calculation.

Q.     Now, when you undertook a calculation of disgorgement of profits, the basic math, if I understand correctly, is to take the revenues from the alleged infringement minus eligible costs and deductions to arrive at defendant's profits subject to disgorgement.  Is that correct?

A.     That could be the ultimate calculation.  The plaintiff's burden is only to show revenue attributable to the infringement.

Q.     And in preparing your profits calculation, did you rely on any information